UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LANCE ADAM GOLDMAN,

          Plaintiff,          Case No. 1:16-cv-1372

v.                                           Honorable Paul L. Maloney

CONSUMERS CREDIT UNION et al.,

          Defendants.
_____/

## OPINION

This is a civil action brought by a state prisoner asserting violation of various federal consumer protection statutes. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Cooper Street Correctional Facility. In his *pro se* complaint, Plaintiff sues Consumers Credit Union (CCU), Kalamazoo County, Kalamazoo County Sheriff Richard Fuller and Kalamazoo County Deputy Jeffrey Baker.

Plaintiff opened a deposit account at CCU on November 15, 2014. Plaintiff consented to a credit check in order to open the account. Over a one-month period, Plaintiff deposited several checks made payable to him drawn upon the Suntrust bank account of Rosanna Dickenson. Plaintiff claims that under the terms of the contract he entered into with CCU, the credit union could place a hold on checks deposited by Plaintiff or grant him an unsecured line of credit until the check cleared. In this case, all of the checks deposited by Plaintiff were returned for insufficient funds. In the meantime, Plaintiff made ATM withdrawals and purchases on his debit card totaling $1,015.03. CCU closed Plaintiff's account on December 13, 2014, and charged off the negative balance of $1,015.03.

Sometime between November 15 and 24, 2014, Defendant Baker called Plaintiff and advised him that he was the loss-prevention officer for CCU. According to Plaintiff, Baker also was employed as a Kalamazoo County Sheriff's Deputy. Baker informed Plaintiff that he had accessed Plaintiff's credit report numerous times in order to monitor credit checks being conducted by other financial institutions where Plaintiff was seeking to open accounts. Baker contacted five other financial institutions where Plaintiff had opened accounts and warned them of the activity on Plaintiff's CCU account. Even after Plaintiff's account was closed by CCU, Plaintiff alleges that Defendant Baker called him numerous times by telephone and email regarding the debt he owed to CCU. Baker allegedly advised Plaintiff to pay back the monies CCU had loaned him or he "would

go to jail." (Compl. ¶ 14, ECF No. 1, PageID.5.) Plaintiff told Baker to stop calling him, but Baker continued to leave him phone messages through February 2015.

As a result of Baker's allegedly unlawful searches of Plaintiff's credit report, Plaintiff was charged in Kalamazoo County with uttering and publishing and obtaining money by false pretenses. Plaintiff was arrested on the charges in Florida and extradited to Michigan, where he pleaded guilty to two counts of false pretenses, more than $1,000 but less than $20,000, MICH. COMP. LAWS § 750.2184A. He was sentenced on March 8, 2006, to concurrent prison terms of 10 to 90 months. *See* Michigan Department of Corrections Offender Tracking and Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=542675.

Plaintiff contends that Baker and CCU obtained his credit report numerous times under false pretenses and without permissible purpose in violation of the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1601 *et seq*., the Truth-in-Lending Act (TILA) 15 U.S.C. § 1601 *et seq*., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Plaintiff further claims that CCU violated the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 *et seq*., by disclosing his financial records to the Kalamazoo County Sheriff's Department without a subpeona or Plaintiff's written consent. Plaintiff also contends that Defendant Fuller and Kalamazoo County developed and maintained policies or customs that caused Plaintiff's rights to be violated. Specifically, Plaintiff claims Defendants Fuller and Kalamazoo County developed a "hands off" policy or custom with regard to the illegal activities undertaken by Defendant Baker, such that Baker believed that he could violate Plaintiff's rights with impunity.

For relief, Plaintiff seeks monetary damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

I.  Consumer Credit Protection Act

Plaintiff asserts violations of the CCPA arising from the alleged unlawful use of his credit report. The CCPA is codified at 15 U.S.C. §§1601-1693r. The subchapters of the CCPA can be summarized as follows:

> Subchapter I of the Consumer Credit Protection Act is the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, which imposes disclosure requirements on creditors. Subchapter II places restrictions on garnishment of compensation, 15 U.S.C. § 1671 *et seq*. Subchapter II-A is the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.*, which protects consumers from unfair trade practices by credit repair organizations. Subchapter III is the FCRA, 15 U.S.C. § 1681 *et seq.*, which primarily regulates credit reporting agencies but also places requirements on users of credit information from these agencies. Subchapter IV is the Equal Credit Opportunity Act, 15 U.S.C.§ 1691 *et seq.*, which prohibits discrimination in the extension of credit. Subchapter V is the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. Subchapter VI is the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, which regulates the participants in electronic fund transfer systems.

*Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir. 2008). In this case, Plaintiff asserts violations of TILA and FCRA.

### A. **TILA**

TILA provides for statutory penalties if a creditor fails to make certain disclosures required under the statute. 15 U.S.C. § 1640(a). The Sixth Circuit explained the purpose of TILA as follows:

> Enacted in 1968, the TILA imposes mandatory disclosure requirements on those who extend credit to consumers. 15 U.S.C. § 1601, *et seq*. The TILA was specifically designed to remedy problems that had developed from the rapidly expanding use of consumer credit in the 1960s. The purpose of the TILA, as stated by Congress, is as follows: It is the purpose of this title . . . to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . . 15 U.S.C. § 1601(a). The Federal Reserve Board has been delegated the power to promulgate regulations to carry out the TILA's purpose. 15 U.S.C. § 1604. These regulations, among other things, mandate specific disclosures in credit transactions. See 12 C.F.R. § 226. In the event that a creditor fails to disclose any of the credit terms required under the TILA and its regulations, a consumer may bring a civil action against the creditor. 15 U.S.C. § 1640. If a violation is proven, the consumer may recover twice the amount of the finance charge (but not less than $100.00 nor more than $1,000.00). *Id*. at § 1640(a)(2)(A). The purpose of the statutory recovery is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." *Watkins v. Simmons & Clark, Inc*., 618 F.2d 398, 399 (6th Cir. 1980).

*Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 799, 800 (6th Cir. 1996). Plaintiff's claim concerns the alleged improper use of his credit report. He does not allege that CCU failed to make required disclosures under the statute. Plaintiff, therefore, fails to state a claim under TILA.

Regardless, any TILA claim arising from the alleged improper credit report searches is barred by the one-year statute of limitations. The Act provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Mills v. EquiCredit Corp.*, 172 F. App'x 652, 656 (6th Cir. 2006). Plaintiff alleges that Defendant Baker informed him between November 15 and 24, 2014, that he had accessed Plaintiff's credit report numerous times. Plaintiff, therefore, was aware of the alleged violation in November 2014. He filed the instant action on or about October 31, 2016, nearly two years after the alleged violation occurred. Accordingly, Plaintiff's TILA claim also is time-barred.

    B. **FCRA**

As relevant here, the FCRA provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]" 15 U.S.C. § 1681b(f)(1). In order to make out a prima facie case under this provision, the plaintiff must show: (i) that the defendant acted willfully; (ii) that there was a "consumer report" within the meaning of the statute; (iii) that the defendant used or obtained it; and (iv) that the defendant did so without a "permissible purpose" within the meaning of the statute. *See Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014). The FCRA identifies a limited set of "permissible purposes" for obtaining and using a consumer report. *See* 15 U.S.C. § 1681b(a)(3); *see also* 15 U.S.C. § 1681b(f). Those permissible purposes provide that a person may access a consumer report if he:

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

\*\*\*

(F) otherwise has a legitimate business need for the information -

(i) in connection with a business transaction that is initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3). Whether a permissible purpose existed in a given case is a question of law. *Daniel v. DTE Energy*, No. 11-13141, 2013 WL 4502151, at \*3 (E.D. Mich. 2013), *aff'd sub nom*. *Daniel v. DTE Energy Co.*, 592 F. App'x 489 (6th Cir. 2015).

In this case, CCU and Defendant Baker, who was employed as a loss prevention officer for CCU, were protected by § 1681b(3)(A). According to account transaction information provided by Plaintiff, his account was closed with a negative balance of $1015.03. (*See* Exhibit B, ECF No. 1-1, Page ID.12.) Plaintiff further claims that CCU, through Defendant Baker, was attempting to collect the debt from Plaintiff. Debt collection is a permissible purpose for obtaining a consumer's credit report. *See Etefia v. Russell Collection Agency, Inc.*, 20 F. App'x 485, 486 (6th Cir. 2001) (stating that § 1681b(a)(3)(A) authorizes a collection agency to request a consumer's credit report); *Carlisle v. Portfolio Recovery Assocs. Inc.*, No. 1:13-CV-209, 2014 WL 4829023, at \*2 (E.D. Tenn. Sept. 29, 2014) ("Because debt collection is a permissible purpose, plaintiff has not alleged facts sufficient to establish an FCRA violation."); *see also Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011); *Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 43 (7th Cir. 2009). Moreover, during the period that Plaintiff's account was open and every check deposited by Plaintiff was being returned for non-sufficient funds, Defendants CCU and Baker

could have obtained Plaintiff's credit report in order "to review an account to determine whether the consumer continues to meet the terms of the account." *See* 15 U.S.C. § 1681b(a)(1)(F)(ii). Because Defendants had a permissible purpose for obtaining Plaintiff's credit report, he fails to state a claim them under the FCRA.

Because Plaintiff fails to state a claim against Defendant Baker under the CCPA, he cannot hold Defendant's Fuller or Kalamazoo County liable under a theory of supervisor liability. Accordingly, Plaintiff also fails to state a claim against Defendants Fuller and Kalamazoo County.

II. <u>Right to Financial Privacy Act</u>

Plaintiff also contends that CCU violated the RFPA by disclosing his financial records to the Kalamazoo County Sheriff's Department without a subpeona or Plaintiff's written consent. The Right to Financial Privacy Act restricts the federal government's ability to access a person's financial records. *Ismail v. Old Kent Bank & Trust Co.*, 893 F.2d 1334 (6th Cir. 1990). A financial institution is subject to liability under the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et. seq.*, for prohibited disclosures to a "government authority" as defined by the RFPA. 12 U.S.C. § 3403(a). A government authority includes any agent of a department of the United States. 12 U.S.C. § 3401(3). Plaintiff alleges that CCU disclosed his financial information to the Kalamazoo County Sheriff's Department, which is not a department of the United States. Consequently, Plaintiff fails to state a claim against CCU under the RFPA. *See Wright v. Liguori*, 445 F. App'x 469, 471 (3d Cir. 2011) ("As the information here was provided to a state official, the RFPA does not apply."); *Easter v. Nevada State Bank*, 58 F. App'x 355 (9th Cir. 2003) (RFPA does not apply to state and local governments).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   April 20, 2017                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge