UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LANCE ADAM GOLDMAN,

        Plaintiff,        Case No. 1:16-cv-1372

v.        Honorable Paul L. Maloney

CONSUMERS CREDIT UNION et al.,

        Defendants.
_____/

## **OPINION**

This matter started out as a civil action brought by a state prisoner asserting violation of various federal consumer protection statutes. The Court granted Plaintiff leave to proceed *in forma pauperis*. The Court conducted a preliminary review of Plaintiff's complaint as required by the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996). By opinion and judgment entered April 20, 2017, the Court dismissed Plaintiff's complaint for failure to state a claim. (ECF Nos. 6,7.) The Court has recently granted Plaintiff's motion pursuant to Rule 59(e), vacating the judgment and accepting for filing Plaintiff's Amended Complaint. The Court must now

undertake review of Plaintiff's Amended Complaint pursuant to the PLRA.

The Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* Amended Complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and for failure to state a claim.

### Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections in the Cooper Street Correctional Facility in Jackson, Michigan. He is serving two concurrent prison terms of 10 to 90 months[1] following his guilty plea to conspiring with Rosanna Dickenson to use false pretenses to obtain money from two credit unions or banks.[2] (Plea Tr., ECF No. 10-1, PageID.331-335.) Despite pleading guilty, Plaintiff contends that virtually every aspect of the investigation and prosecution of his crimes was defective. His relatively concise initial complaint has been transformed into a 48-page, 148-paragraph rambling legal argument with a periodic sprinkling of factual allegations.

In his initial complaint Plaintiff sued Consumers Credit Union (CCU), one of the credit unions he victimized, Kalamazoo County Deputy Jeffrey Baker, a loss prevention officer for CCU and as well as the deputy who investigated Plaintiff's crimes, Kalamazoo County Sheriff Richard Fuller, for permitting Defendant Baker's improper actions, and Kalamazoo County. The factual allegations were limited to the incidents that led to his criminal prosecution. Specifically, Plaintiff opened deposit accounts at two Kalamazoo-area financial institutions, including CCU, during November, 2014. Plaintiff deposited

---

[1]*See* Michigan Department of Corrections Offender Tracking and Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=542675.

[2]Ms. Dickenson also pleaded guilty to writing checks without sufficient funds and using false pretenses to obtain money. *See* OTIS, http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=964144. She is presently serving a term of probation and has returned to Florida. *Id.*

several checks made payable to him drawn upon the Suntrust bank account of Rosanna Dickenson. Plaintiff claims that under the terms of the contract he entered into with CCU, the credit union could place a hold on checks deposited by Plaintiff or grant him an unsecured line of credit until the check cleared. All of the checks deposited by Plaintiff were returned for insufficient funds. Plaintiff alleges that he knew Ms. Dickenson did not have the money in her account, but he expected the checks would be covered by an overdraft line of credit.

Sometime between November 15 and 24, 2014, Defendant Baker called Plaintiff and advised him that he was the loss-prevention officer for CCU. According to Plaintiff, Baker also was employed as a Kalamazoo County Sheriff's Deputy. Baker informed Plaintiff that the checks from Ms. Dickenson had been returned unpaid and advised Plaintiff to return the money to CCU or Plaintiff and Ms. Dickenson would go to jail. Mr. Baker informed Plaintiff that he must pay the obligation within a certain time or further action would be taken.

Defendant Baker also informed Plaintiff that he had accessed Plaintiff's credit report numerous times in order to monitor credit checks being conducted by other financial institutions where Plaintiff was seeking to open accounts. Baker told Plaintiff he was contacting other financial institutions where Plaintiff had opened accounts and warning them of the activity on Plaintiff's CCU account. Plaintiff alleges that Defendant Baker informed the other financial institutions that he was a Sheriff's Deputy Detective and that he could collect Plaintiff's debts to them.

Plaintiff alleges that Defendant Baker contacted him numerous times by telephone and email regarding the debt he owed to CCU. Plaintiff told Baker to stop calling him, but Baker continued to leave him phone messages.

Plaintiff contends that it was a result of Baker's allegedly unlawful searches of Plaintiff's credit report, that Plaintiff was charged in Kalamazoo County with uttering and publishing and obtaining money by false pretenses. Plaintiff was arrested on the charges in Florida and extradited to Michigan, where he pleaded guilty to one count of obtaining money under false pretenses, MICH. COMP. LAWS § 750.2184A, and one count of conspiracy to obtain money under false pretenses.

Plaintiff's initial complaint essentially ended at that point. Plaintiff claimed the Defendants' conduct violated the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1601 *et seq.*, the Truth-in-Lending Act (TILA) 15 U.S.C. § 1601 *et seq.*, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Plaintiff further claimed that CCU violated the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 *et seq.*, by disclosing his financial records to the Kalamazoo County Sheriff's Department without a subpeona or Plaintiff's written consent. In his motion for reconsideration, Plaintiff also argues that a claim under the federal Fair Debt Collection Practices Act was implicit in his allegations.[3] Plaintiff does not expressly make any of these claims in his Amended Complaint.

In his Amended Complaint, Plaintiff again sues the initial Defendants (Baker, CCU, Fuller, and Kalamazoo County) and adds twenty new ones. Plaintiff's focus has shifted from the pre-prosecution attempt to collect the debt to the criminal prosecution itself. Each of the Defendants played some role in Petitioner's arrest, extradition, prosecution, or punishment. The roles of Defendant Baker and CCU are described above. Plaintiff contends that Defendant Fuller and Kalamazoo County developed and maintained policies or customs that caused Plaintiff's rights to be violated. Specifically, Plaintiff claims

---

[3]Plaintiff's suggested claim under the federal Fair Debt Collection Practices Act would have fared no better because Plaintiff represents that Defendant Baker was acting as an officer of CCU, which would render him exempt under 15 U.S.C. § 1692a(6)(A). The only alternative alleged by Plaintiff is that Defendant Baker was acting as a deputy, which would render him exempt under 15 U.S.C. § 1692a(6)(C).

Defendants Fuller and Kalamazoo County developed a "hands off" policy or custom with regard to the illegal activities undertaken by Defendant Baker, such that Baker believed that he could violate Plaintiff's rights with impunity.

Defendant Magistrate Nicholas Schaberg signed the felony complaint submitted by Defendant Baker. Defendant Assistant Prosecuting Attorney Gregory W. Russell authorized the warrant. The complaint charged three counts of uttering and publishing, one count of false pretenses, and one count of conspiracy to commit false pretenses.

Plaintiff contends that Defendant Baker's complaint was deficient in that it lacked facts to support the statutory violations alleged. Plaintiff claims Defendant Baker, therefore, committed common law and statutory offenses of perjury, obstruction of justice, contempt, moral turpitude, and misconduct in office, in violation of state and federal law, and violated Plaintiff's civil rights under the state and federal constitutions. Plaintiff claims that Defendant Schaberg conspired with Defendant Baker to deprive Plaintiff and Ms. Dickenson of their due process rights.

Defendant Michigan Governor Rick Snyder, based on the defective warrant which was based on the defective complaint, signed the extradition papers that brought Plaintiff from Florida to Michigan for prosecution. Assistant Prosecuting Attorney Heather S. Bergmann prepared the application that prompted Defendant Snyder's action.[4]

Defendant District Court Judge Christopher T. Haenicke presided over Plaintiff's arraignment, set plaintiff's bond, and bound Plaintiff over to Circuit Court following his preliminary

---

[4] Ms. Bergman is referenced as a "defendant" in the complaint, but she is not identified as a party in the prefatory section of the complaint. If Petitioner were to obtain leave to amend his complaint to add Ms. Bergman as a party, she would enjoy the same prosecutorial immunity discussed in § II. C. below.

examination. Plaintiff argues that Defendant Haenicke should have recused himself because he had also presided over Ms. Dickenson's arraignment.

Defendant Assistant Prosecuting Attorney Michael Stein served as prosecutor at Plaintiff's preliminary examination. Defendant Stein voluntarily dismissed the uttering and publishing charges, but he also added a new false pretenses charge. Plaintiff contends he was maliciously prosecuted.

Once the matter was bound over to circuit court, Defendant Russell filed a new information alleging five counts of false pretenses and one count of conspiracy to commit false pretenses. Plaintiff contends the information lacks sufficient factual allegations and, therefore, is deficient. Because the complaint, arrest warrant, and information are so deficient, Plaintiff argues that Defendant 8th District Court and 9th Circuit Court never obtained subject-matter jurisdiction. Defendant Judge Gary C. Giguere, Jr. has refused to acknowledge Plaintiff's jurisdictional arguments. Plaintiff claims that his appointed counsel Defendant Matthew Glaser, Defendant Giguere, and Defendant Assistance Prosecuting Attorney Kenneth N. Barnard tricked Plaintiff into pleading guilty by deceiving him with regard to the expected sentence, thereby rendering his plea unknowing, unintelligent, and involuntary.

Defendant Michigan Court of Appeals Judges Colleen A. O'Brien, Mark J. Cavanaugh, and Kathleen Jansen, and Defendant Michigan Court of Appeals, wronged Plaintiff by denying his delayed application for leave to appeal. Plaintiff sues the Michigan Supreme Court as well, presumably because that court also denied Plaintiff's application for leave to appeal.

Defendant Michigan Attorney General William Schuette has heard Plaintiff's complaints regarding the prosecutors and government officials as alleged in Plaintiff's complaints but has done nothing. Similarly, Defendant MDOC Director Heidi Washington has failed to prevent the MDOC from accepting

invalid sentences and judgments. Plaintiff sues Defendant MDOC for conspiring with the judges to keep prisoners illegally incarcerated to maintain funding and make "BIG BUSINESS out of the Judicial and Penal System." (Am. Compl., ECF No. 10-1, Page ID.231-232.) Defendant also complains that all of the Defendants have conspired together, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO) to keep MDOC prisons populated, to further their political goals, and to generate contract and kick-back profits.

Plaintiff does not reveal why he has sued Defendant Michigan Parole Board; however, he does contend that it is unfair that the statute specifying the Michigan Parole Board's jurisdiction excludes him because, as Plaintiff reads the statute, his minimum sentence is less than one year and thus is not a "term of years." MICH. COMP. LAWS § 791.234(1). The Michigan Court of Appeals has expressly rejected that reading of the statute suggested by Plaintiff because it "would lead to an absurd result . . . ." *Kelly v. Michigan Parole Board*, No. 292836, 2010 WL 4260900, *2 (Mich. Ct. App. Oct. 28, 2010). Based on the Michigan Court of Appeals analysis, it appears the legislature referenced "an indeterminate sentence . . . with a minimum in terms of years" to distinguish it from a sentence with a minimum term of life, as opposed to distinguishing it from a sentence with a minimum term of months. Plaintiff also apparently sues the Michigan Supreme Court for interpreting the "term of years" in a logical manner rather than the absurd manner he suggests is appropriate.

Plaintiff contends that the state statute under which he was sentenced, MICH. COMP. LAWS § 769.34(4)(c), is unconstitutional on its face and as applied to Plaintiff because, as Plaintiff reads the statute, he should have only had a minimum sentence and no maximum.

Plaintiff asks for compensatory, actual and punitive damages of $25,000.00, as well as release from incarceration.

**<u>Discussion</u>**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### I. Plaintiff's complaint challenges the fact and duration of his confinement

Plaintiff challenges his incarceration by the State of Michigan. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a

prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of his conviction. Therefore, his action is barred under *Heck* until his criminal conviction has been invalidated.

II. Immunity

A. Eleventh Amendment immunity

Plaintiff sues the State of Michigan, the MDOC, the Michigan Parole Board, the Michigan Supreme Court, the Michigan Court of Appeals, the Ninth Circuit Court, and the Eighth District Court. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979)[5], and the State of Michigan has not consented to suits such as Plaintiff's suit in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

---

[5] The *Quern* Court addressed abrogation of immunity for suits under 42 U.S.C. §1983. The Sixth Circuit, citing *Quern*, has concluded that Congress has not indicated its intent to abrogate state sovereign immunity in the RICO Act. *Chaz Const., L.L.C. v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005). RICO is the only other federal claim raised by Plaintiff.

In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

The sovereign immunity of the State of Michigan extends to its departments including: the MDOC, *see, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); the Michigan Parole Board, *see Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004) (same); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (same); and the Michigan courts, *See Abick*, 803 F.2d at 877; *Harmon v. Hamilton County Court of Common Pleas*, 83 F. App'x 766, 768 (6th Cir. 2003); *Metz v. Supreme Court of Ohio*, 46 F. App'x 228, 236-37 (6th Cir. 2002); *Mumford v. Basinski*, 105 F.3d 264, 268-70 (6th Cir. 1997).

### B. Judicial immunity

Judicial immunity protects the five judges and one magistrate[6] that Plaintiff has named as Defendants. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115

---

[6] Judicial immunity extends to state court magistrates. *Riser v. Schnieder*, 37 F. App'x 763 (6th Cir. 2002); *Krajicek v. Justin*, No. 98-1249, 1999 WL 195734 (6th Cir. Mar. 23, 1999); *Sawchyn v. Dunning*, No. 97-3627, 1998 WL 136586 (6th Cir. Mar. 20, 1998).

(6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

There is no doubt that the actions of the judicial Defendants were judicial acts taken in each respective judge's judicial capacity. So, the first exception to immunity is inapplicable. Plaintiff contends the courts and judges acted without subject matter jurisdiction because, according to Plaintiff, the complaint and information were so deficient. In pressing this contention, Plaintiff is confusing the concepts of personal jurisdiction and subject matter jurisdiction. The distinction is critical, because:

> [O]nly in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity. When, however, a court with subject matter jurisdiction acts where for example personal jurisdiction is lacking, judicial and prosecutorial absolute immunity remain intact. Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity.

*Leech v. DeWeese*, 689 F.3d 538, 542-543 (6th Cir. 2012) (quoting Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001)).

The Michigan courts describe the concept of subject matter jurisdiction as follows: "Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v. Lown,* 794 N.W.2d 9, 24 (Mich., 2011) (internal quotation marks and emphasis omitted). Procedural deficiencies, including deficiencies in the felony complaint, affect personal jurisdiction, not subject matter jurisdiction. *See, e.g.,*

*Lown*, 794 N.W.2d at 24 (violation of the 180-day rule); *People v. Boyce*, No. 318859, 2016 WL 97896 (Mich. Ct. App. Jan. 7, 2016) (alleged deficiencies in the felony complaint, warrant, and return); *see also Sumpter v. Atkins*, No. 12-13958, 2013 WL 4016494 (E.D. Mich. Aug. 6, 2013) (alleged deficiencies in the form and content of the criminal complaint). The deficiencies of which Plaintiff complains do not affect the state court's subject matter jurisdiction and, therefore, do not affect absolute judicial immunity. Plaintiff may not maintain an action for monetary damages against the judicial Defendants. 28 U.S.C. § 1915(e)(2)(B)(iii).

Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

### C. Prosecutorial immunity

Defendant Assistant Prosecuting Attorneys Russell, Stein, and Barnard are protected by prosecutorial immunity. Prosecutors are also entitled to absolute immunity for their actions in prosecuting the criminal case against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th

Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). There can be no question that the prosecutorial actions complained of by Plaintiff are traditional prosecutorial functions; accordingly, the prosecutor Defendants are protected by absolute immunity.

### III. RICO

RICO prohibits a person who is employed by or associated with any enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity or collection of an unlawful debt. 18 U.S.C. § 1962(c). Thus, a RICO claim requires factual allegations establishing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Company*, Inc., 473, U.S. 479, 496 (1985). Although Plaintiff repeats the term "pattern" a few times in the Amended Complaint, he offers little else to satisfy the pleading requirements. The Amended Complaint fails to identify

the predicate acts of racketeering activity that form the pattern.[7] This failure is fatal to Plaintiff's RICO claim. *See Moon v. Harrison Piping Supply Co.*, 465 F.3d 719, 724 (6th Cir. 2006) (court held that pleading two predicate acts was "necessary to sustain a RICO claim . . . [although it] may not be sufficient . . . ."). Moreover, Plaintiff's allegation that the entire Michigan criminal justice system is simply a giant corrupt organization that is designed to generate money and power for the participants is so fantastical, irrational and incredible that the Court cannot accept it as true in evaluating whether Plaintiff has stated a claim.

IV. Respondeat superior liability

With respect to Defendant Snyder, Washington, and Schuette, Plaintiff complains that they are liable because they have failed to correct wrongs perpetrated by others. Governor Snyder failed to correct the deficient criminal complaint and arrest warrant. (Am. Compl., ECF No. 10-1, PageID.214.) MDOC Director Heidi Washington failed to reject the invalid sentence imposed on Plaintiff. (*Id.*, PageID.233.) Attorney General Bill Schuette failed to respond to Plaintiff's reports of wrongdoing. (*Id.*) Each claim is premised on an underlying wrong, the pursuit of which is barred by *Heck*, but each claim is also independently insufficient under § 1983.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*

---

[7] "Racketeering activity" is defined to include specific state criminal offenses and specific federal criminal offenses. 18 U.S.C. § 1961(1). The only "racketeering activity" even mentioned in the Amended Complaint is a fleeting conclusory reference to "obstruction of justice" (Am. Compl., ECF No. 10-1, PageID.212); but Plaintiff has utterly failed to allege facts to establish that federal crime. Absent a "pattern of racketeering activity" Plaintiff must allege "collection of an unlawful debt." 18 U.S.C. § 1962(c). Although Plaintiff has made many allegations suggesting *unlawful collection* of a debt, he has not alleged collection of an *unlawful debt*. Indeed, Plaintiff acknowledges he incurred debts to the financial institutions. (Am. Compl., ECF No. 10-1, PageID.205-206.)

*v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Snyder, Washington, or Schuette engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

V. Defendant Glaser is not a state actor

Plaintiff's § 1983 claim against Defendant Glaser is barred by *Heck*, but if it were not barred, Plaintiff has still failed to state a claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."

*Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). A criminal defense attorney, even one appointed to serve an indigent defendant, "is not . . . a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981).

## VI. The underlying due process violations

Plaintiff's challenge to his criminal prosecution flows from his conclusions regarding the legal consequences of the account transactions consummated between Ms. Dickenson, Plaintiff, and CCU. Plaintiff contends those transactions cannot constitute a crime. CCU, Defendant Baker, the Kalamazoo County Sheriff, and the state courts concluded otherwise. It is the conclusion of the state courts that matters here.

It is the prerogative of the state to define the elements of the crime[8] and the federal courts are bound by their determination. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). It is also the prerogative of the state to determine what charge or charges to bring:

---

[8]It is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted).

Plaintiff has raised all of his challenges (that his conduct is not criminal, that the criminal complaint, warrant, and information are fatally deficient, that the state court did not have subject matter jurisdiction over him) in the state courts on the direct appeal of his conviction. The state appellate courts have rejected them by denying leave to appeal. At least as a matter of state law, therefore, Plaintiff's claims have no merit. If, indeed, their remains a federal constitutional infirmity to his conviction and sentence, it must be addressed in a habeas corpus petition, not some other form of civil action.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Amended Complaint will be dismissed on grounds of immunity and for failure to state a claim[9] pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis

---

[9] A court's dismissal of a claim on the basis that it is barred by *Heck v. Humphrey* is properly considered a dismissal under 28 U.S.C. § 1915(g) because it fails to state a claim on which relief can be granted. *See Hunt v. Michigan*, 482 F. App'x 20, 22 (6th Cir. 2012) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (same).

for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: June 9, 2017   /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge